

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 7258

----------------------------------------------------------------X

CAPITAL VENTURES INTERNATIONAL,  :

                    Plaintiff,  :

                                :   14 Civ. _____

        v.                      :

                                :   **COMPLAINT**

REPUBLIC OF ARGENTINA,          :

                    Defendant.  :

----------------------------------------------------------------X

Plaintiff Capital Ventures International ("CVI"), by its attorneys, Ballard Spahr LLP and Ballard Spahr Stillman & Friedman LLP, for its complaint, alleges:

## NATURE OF THE ACTION

1.      This is a breach of contract action arising from the breach by defendant Republic of Argentina ("Argentina") of the pari passu and equal treatment clause (the "Pari Passu/Equal Treatment Clause") governing certain Bonds (defined in Paragraph 9 below) issued by Argentina and beneficially owned by CVI. The Bonds were issued pursuant to a 1994 Fiscal Agency Agreement ("FAA").

2.      CVI seeks a finding that Argentina is in breach of the Pari Passu/Equal Treatment Clause of the FAA as it relates to the Bonds and further seeks specific performance and preliminary and permanent injunctive relief precluding Argentina from continuing to violate the Pari Passu/Equal Treatment Clause of the Bonds.

## THE PARTIES

3.      CVI is an alien company organized and existing under the laws of the Cayman Islands.

DMEAST #19166951 v2

4.      Argentina is a foreign state.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330(a) because this is a nonjury action against a foreign state as to a claim for relief *in personam* with respect to which Argentina is exempt from and has waived sovereign immunity pursuant to the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. § 1605(a).

6.      Argentina waived sovereign immunity in the FAA.

7.      Argentina consented in the FAA to the jurisdiction of this Court with respect to any action commenced by any bondholder arising out of or based on the FAA or any bonds issued by Argentina. Pursuant to the FAA (Section 22), Argentina appointed Banco de la Nación Argentina, at its office in New York City, as an authorized agent for service of process. The FAA also provides (Section 23) that it shall be "governed by, and interpreted in accordance with, the laws of the State of New York."

8.      Venue is proper in this District pursuant to (i) the FAA and (ii) 28 U.S.C. § 1391(f)(1) in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, in New York, New York.

## FACTUAL ALLEGATIONS

### The Bonds

9.      CVI is the beneficial owner of the following government bonds, notes, debentures or other securities denominated in United States Dollars and Euros issued by Argentina (collectively, the "Bonds"): ISIN Codes: US040114AN02, US040114AR16, US040114AZ32, US040114BE93, US040114GD65, US040114GG96, US040114GH79 and XS0086333472.

DMEAST #19166951 v2

10.    The Bonds were issued pursuant to the FAA, dated October 19, 1994, between Argentina and Bankers Trust Company.

11.    CVI performed all of its obligations under the Bonds.

12.    The amount owing to CVI under the Bonds is in excess of $200,000,000.00.

**Argentina's Default**

13.    In December 2001, Argentina declared a moratorium on the payment of principal and interest with respect to all of its foreign debt.

14.    Since then, Argentina has failed to make any payment of principal or interest under the Bonds.

15.    Argentina thus defaulted on the Bonds by at least 2001.

16.    On April 22, 2005, CVI gave Argentina written notice of acceleration of the Bonds.

17.    CVI then brought suit against Argentina in 2005 and 2006, asserting claims of breach by Argentina based on its default under the Bonds as a result of declaring a moratorium on payment and failing to make principal and interest payments when due.

18.    In 2007, CVI obtained judgments from the District Court on its claims against Argentina for its default in connection with the Bonds. Those judgments were for $52,116,640 (entered on March 16, 2007 in case number 05-Civ.-4085(TPG)) and $104,450,284 (entered on June 8, 2007 in case number 06-Civ.-207(TPG)).

19.    CVI has not sold or otherwise disposed of the Bonds since the entry of the judgments.

20.    CVI has not been paid by Argentina or otherwise recovered any amount in satisfaction of its judgments.

- 3 -

**Argentina's Violations of the Pari Passu/Equal Treatment Clause**

21.     In addition to its breaches of its payment obligations under the Bonds through its moratorium and non-payment beginning in 2001, Argentina subsequently breached other obligations it had under the Bonds to afford the Bonds equal treatment with other external debt of Argentina.

22.     Section 1(c) of the FAA governing the Bonds contains the Pari Passu/Equal Treatment Clause in which Argentina agreed to treat the Bonds equally with its other external obligations.

23.     In particular, Section 1(c) of the FAA states, in relevant part:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . .

24.     According to its plain language, the Pari Passu/Equal Treatment Clause means that Argentina may not make a payment to a holder of External Indebtedness without a ratable payment being made at the same time to CVI.

25.     In 2005, Argentina restructured its debt by offering a bond exchange to all holders of non-performing external debt (the "2005 Exchange").

26.     Holders of approximately 25% of Argentina's external debt did not participate in the 2005 Exchange.

27.     CVI did not participate in the 2005 Exchange.

28.     Bondholders who participated in the 2005 Exchange received bonds scheduled to pay semi-annual interest ("2005 Bonds").

29.     The first interest payment on the 2005 Bonds was due and paid in 2005.

30.    Argentina paid all subsequent interest due on the 2005 Bonds until this Court's injunction precluded Bank of New York Mellon ("BNY"), the Indenture Trustee of the Exchange Bonds, from distributing payments due on June 30, 2014.

31.    Even then, upon information and belief, Argentina attempted to pay the amounts due on the 2005 Bonds and urged BNY to distribute amounts Argentina deposited with BNY to the holders of the 2005 Bonds in violation of the injunction order.

32.    Upon information and belief, Argentina intends to circumvent the Court's injunction so that it may continue to pay interest on all 2005 Bonds as it becomes due.

33.    To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 ("the Lock Law") on February 9, 2005.

34.    In a January 28, 2010 Prospectus, Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation in the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law." The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange. . . .**

(emphasis added.)

35.    The Lock Law provided that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

> a.    Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.
>
> b.    Article 3 – The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

- 5 -

c.      Article 4 – The national Executive Power must – within the framework of the terms of the issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions – order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

36.    In 2009, in preparation for another bond exchange to occur in 2010 (the "2010 Exchange"), the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 (the "Lock Law Suspension") which, among other things, suspended the Lock Law for purposes of the 2010 Exchange.

37.    The Lock Law Suspension specifically provided:

a.      Article 1- The effect of articles 2, 3 and 4 of the Law No. 26.017 is suspended until 31 December, 2010, or until such time as the National Executive Power, through the Ministry of the Economy and Public Finance, declares that the process of restructuring the government bonds affected by the referenced regulation is completed, whichever occurs first.

b.      Article 3 - The financial terms and conditions that are offered may not be equal to or better than those offered to creditors, in the debt restructuring stipulated by Decree No. 1735/04.

c.      Article 5 - It is prohibited to offer to the holders of government bonds who may have initiated judicial, administrative, arbitration or any other type of action, more favorable treatment than what is offered to those who have not done so.

38.    The bonds issued in the 2010 Exchange (the "2010 Bonds") paid semi-annual interest beginning on December 2, 2010.

39.    Upon information and belief, Argentina intends to pay or attempt to pay interest on all 2010 Bonds as it becomes due.

40.    CVI did not participate in the 2010 Exchange.

41.    Upon information and belief, Argentina will continue to pay nothing to CVI.

42.    Through its passage of the Lock Law and the Lock Law Suspension, issuing the 2005 Bonds and 2010 Bonds which have been accorded greater rights than the Bonds, and

- 6 -

DMEAST #19166951 v2

making interest payments on the 2005 Bonds and 2010 Bonds while failing to pay CVI anything it owes on the Bonds, Argentina has breached the Pari Passu/Equal Treatment Clause of the FAA.

43. CVI has been damaged as a result of these violations and will continue to be damaged by the continuing violations of the Pari Passu/Equal Treatment Clause.

## NML and Other Bondholders' Case for Violations of the Pari Passu/Equal Treatment Clause

44. In or around 2011, NML Capital, Ltd. ("NML"), and several other holders of Argentine bonds who had not yet secured judgments against Argentina for its default, asserted claims against Argentina based on the Pari Passu/Equal Treatment Clause of the FAA and sought specific performance and injunctive relief. NML Capital, Ltd. v. The Republic of Argentina, Case No. 08-Civ-6978 (TPG) ("the NML Case").

45. In the NML Case, the bondholders contended that the Pari Passu/Equal Treatment Clause of the FAA precluded Argentina from paying interest to holders of the 2005 Bonds and 2010 Bonds unless it simultaneously paid the holders of the outstanding, non-performing bonds issued under the FAA the amounts owed to them.

46. The District Court held that Argentina had breached the Pari Passu/Equal Treatment Clause of the FAA through, among other things, the enactment of the Lock Law and Lock Law Suspension, stating:

> [I]t's hard for me to believe that there is not a violation of the [Pari Passu/Equal Treatment Clause] accomplished by the congressional legislation in '05 and '10, simply saying that the Republic will not honor these judgments. It is difficult to imagine anything would reduce the rank, reduce the equal status or simply wipe out the equal status of these bonds under the [Pari Passu/Equal Treatment Clause] [more than the Lock Law and Lock Law Suspension] . . . [The Pari Passu/Equal Treatment Clause] can't be interpreted to allow the Argentine government to simply declare that these judgments will not be paid, and that's what they have done.

- 7 -

See NML Capital, Ltd. v. The Republic of Argentina, 699 F.3d 246, 254 (2d Cir. 2012) (quoting District Court).

47.     The United States Court of Appeals for the Second Circuit affirmed the District Court's ruling, finding that Argentina did breach the Pari Passu/Equal Treatment Clause of the FAA through its actions. *Id.* at 250 ("We hold that an equal treatment provision in the bonds bars Argentina from discriminating against plaintiffs' bonds in favor of bonds issued in connection with the restructurings and that Argentina violated that provision by ranking its payment obligations on the defaulted debt below its obligations to the holders of its restructured debt.").

48.     The District Court also granted specific performance and injunctive relief to NML and other bondholders after concluding that each of the factors relevant to entry of specific performance "strongly support issuance of equitable relief to prevent the Republic from further violating Paragraph 1(c)." Thus, the Court ordered Argentina to "specifically perform its obligation to NML under Paragraph 1(c) of the FAA" by making a ratable payment "concurrently or in advance" to NML "[w]henever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the 'Exchange Bonds')." NML Case, February 23, 2012 Order, Docket No. 371 (the "Injunction Order"), p. 2 ¶ 1 & pp. 3-4 ¶ 2(a).

49.     The District Court further "Enjoined [Argentina] from violating Paragraph 1(c) of the FAA, including by making any payment under the terms of the Exchange Bonds without complying with its obligations pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to NML." *Id.*, p. 4 ¶ 2(d).

DMEAST #19166951 v2

50.    Again, the Second Circuit affirmed the District Court's ruling, agreeing that the standard for requiring specific performance and granting injunctive relief had been satisfied. NML Capital, 699 F.3d at 250 ("we affirm the judgment of the district court; we find no abuse of discretion in the injunctive relief fashioned by the district court").

51.    The Second Circuit remanded to the District Court for clarification about the ratable payment formula and the application of the injunction to third parties. *Id.*

52.    The District Court subsequently amended the Injunction Order, making clear that the payment required to be made by Argentina was the same percentage that Argentina paid or intended to pay to the Exchange Bonds of the amount that was "then due under the terms of the Exchange Bonds." NML Case, Amended February 23, 2012 Order, Docket No. 425 (the "Amended Injunction Order"), pp. 4-5 ¶ 2(b), (c).

53.    In other words, if Argentina intended to pay Exchange Bonds 100% of the amount due to them on any given payment date (for instance, 100% of an interest payment due on a given date), it would be required to pay NML and other bondholders 100% of the amount then due to them, including all accelerated principal and past-due interest.

54.    The Second Circuit again affirmed the District Court's ruling. NML Capital, Ltd. v. The Republic of Argentina, 727 F.3d 230 (2d Cir. 2013).

55.    Argentina sought certiorari from the United States Supreme Court of both rulings from the Second Circuit and both petitions were denied.

56.    Accordingly, both the District Court and the Second Circuit have conclusively held that Argentina's actions constitute a breach of the FAA's Pari Passu/Equal Treatment Clause and that Argentina's conduct throughout its litigations with bondholders warrants the

- 9 -

imposition of specific performance and injunctive relief to prevent further breaches by Argentina of its obligations under the FAA.

57.    Moreover, more recently Argentina endeavored to make certain payments to Exchange Bondholders by transferring the equivalent of approximately $539 million on or about June 26, 2014, to BNY, the Indenture Trustee on the Exchange Bonds, for subsequent payment to the Exchange Bondholders.  The District Court found, as set forth in its August 6, 2014 Order (Docket No. 633), that this payment by Argentina was illegal and a violation of the Injunction Order.

58.    Argentina has since declared that it will conduct another exchange that will provide for payment to bondholders in Argentina through banks that will not adhere to the District Court's injunction order.

59.    The District Court found that Argentina's action was an illegal attempt to circumvent the Injunction Order, yet Argentina has demonstrated its willingness to violate the District Court's mandates and may not be deterred.

**The Factors that Warranted Equitable Relief in the NML Case Apply with Even Greater Force for CVI**

60.    Almost ten years have passed since CVI first filed suit against Argentina for its default under the Bonds.

61.    Seven years have passed since CVI first obtained judgments against Argentina for its default under the Bonds.

62.    Despite extensive efforts, CVI has not been able to collect on its judgments.

63.    Indeed, Argentina has thwarted every effort CVI has made to collect on its judgments and has shown its continuing contempt for the District Court and the Second Circuit, admitting that it would not voluntarily comply with any order of the Court with which it

DMEAST #19166951 v2

disagrees. Even more recently, in June 2014, Argentina tried to make certain payments on the Exchange Bonds, and the Court held that the payments were unlawful and violated the Injunction Order.

64.    Through the passage of the Lock Law, Argentina issued the 2005 Bonds, which carry payment obligations that rank higher than the Bonds in violation of the Pari Passu/Equal Treatment Clause.

65.    Through the passage of the Lock Law Suspension, Argentina issued the 2010 Bonds, which carry payment obligations that rank higher than the Bonds, in violation of the Pari Passu/Equal Treatment Clause.

66.    Argentina's past payment of interest to holders of 2005 Bonds, while paying nothing to CVI, violated the Pari Passu/Equal Treatment Clause.

67.    Argentina's continuing payment of interest to holders of 2005 Bonds, while paying nothing to CVI, is a continuing violation of the Pari Passu/Equal Treatment Clause.

68.    Argentina's past payment of interest to holders of 2010 Bonds, while paying nothing to CVI, violated the Pari Passu/Equal Treatment Clause.

69.    Argentina's continuing payment of interest to holders of 2010 Bonds, while paying nothing to CVI, is a continuing violation of the Pari Passu/Equal Treatment Clause.

70.    Argentina's efforts to circumvent the Injunction Order so that it may continue to make payments to the 2005 Bonds and 2010 Bonds is another way Argentina is ranking these bonds higher than CVI's Bonds in a continuing violation of the Pari Passau/Equal Treatment Clause.

71.    Argentina is therefore in breach of the Pari Passu/Equal Treatment Clause of the FAA in connection with CVI's Bonds.

- 11 -

72.     If Argentina makes additional payments to any holders of the bonds issued pursuant to the FAA who have not secured a judgment without paying CVI, Argentina will be in further violation of the Pari Passu/Equal Treatment Clause.

73.     CVI has been damaged by Argentina's violations of the Pari Passu/Equal Treatment Clause and will continue to be damaged by Argentina's continuing violation of the Pari Passu/Equal Treatment Clause.

74.     Argentina must therefore be precluded from continuing to violate the Pari Passu/Equal Treatment Clause and must be enjoined from making payments of any External Indebtedness without also making ratable payments contemporaneously to CVI.

75.     Just like NML in the NML Case, "[a]bsent equitable relief, [CVI] would suffer irreparable harm because the Republic's payment obligations to [CVI] would remain debased of their contractually-guaranteed status, and [CVI] would never be restored to the position it was promised that it would hold relative to other creditors in the event of default." Injunction Order, p. 2 ¶ 1(a).

76.     Just like NML in the NML Case, CVI has "no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA because the Republic has made clear -- indeed, it has codified in [the Lock Law and Lock Law Suspension] -- its intention to defy any money judgment issued by [the District] Court." *Id.*, ¶ 1(b).

77.     In fact, Argentina has made its defiance even more clear since the District Court's Injunction Order in the NML Case.

78.     The District Court recognized this in refusing to extend the stay of its order on November 21, 2012. In particular, the Court explained: "From the moment of the October 26, 2012 Court of Appeals' decision, the highest officials in Argentina have declared that Argentina

- 12 -

DMEAST #19166951 v2

would pay the exchange bondholders but would not pay one dollar to holders of the original FAA Bonds. President Cristina Kirchner made such a statement. The Minister of Economy, Lorenzino, declared that despite any ruling to come out of any jurisdiction, Argentina would not pay the FAA bondholders. . . . For the past ten years Argentina has repeatedly submitted matters to the District Court and the Court of Appeals, and received what was undoubtedly fair treatment, since Argentina prevailed in most matters. The court went on to urge that the Argentine government should back away from these ill-advised threats to defy the current court rulings, and that any defiance of the rulings of the courts would not only be illegal but would represent the worst kind of irresponsibility in dealing with the judiciary. This did not stop the highest Argentine officials who have continued to the present time their inflammatory declarations that the court rulings will not be obeyed." NML Case, Docket No. 423, pp. 2-3.

79. Argentina remained undaunted by the District Court's reprimand, admitting to the Second Circuit in 2013 during oral argument that it would not voluntarily comply with any ruling of the court with which it disagreed. And in late June 2014, Argentina in fact endeavored to make payments on the Exchange Bonds that the District Court found to be in violation of the Injunction Order. Then in early August 2014, it wrote to the Indenture Trustee to which it had transferred the monies for payment to Exchange Bondholders, urging that the Indenture Trustee, in effect, not abide by the Injunction Order. *See* NML Case, Docket No. 635. Most recently, Argentina declared that it would conduct yet another exchange of bonds providing that newly issued bonds would be paid in Argentina to circumvent the jurisdiction and rulings of the District Court and Second Circuit.

80. Moreover, just like for NML in the NML Case, the balance of the equities "strongly supports" entry of injunctive relief on behalf of CVI "in light of the clear text of

- 13 -

Paragraph 1(c) of the FAA" and Argentina's "repeated failures to make required payments to [CVI]. In the absence of the equitable relief provided by this Order, the Republic will continue to violate Paragraph 1(c) with impunity, thus subjecting [CVI] to harm. On the other hand, the [injunction] requires of the Republic only that which it promised [CVI] and similarly situated creditors to induce those creditors to purchase the Republic's bonds. Because the Republic has the financial wherewithal to meet its commitment of providing equal treatment to both [CVI] (and similarly situated creditors) and those owed under the terms of the Exchange Bonds, it is equitable to require it to do so. Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to [CVI], in direct violation of its contractual commitments set forth in Paragraph 1(c) of the FAA." Injunction Order, pp. 2-3 ¶ 1(c).

81.     Again, since the District Court initially entered the Injunction Order in the NML Case, the balance of equities has tilted even more strongly in CVI's favor. First, the Second Circuit's affirmance of the District Court's interpretation of the Pari Passu/Equal Treatment Clause eliminates any risk that Argentina could avoid a finding of breach under the FAA. Second, Argentina's intransigence and defiance has continued unabated. And, third, CVI as a judgment holder is at least similarly situated with NML and other pre-judgment bondholders and, in the interests of justice, is entitled to even greater protections from the Court.

82.     And, just like in the NML Case, the "public interest of enforcing contracts and upholding the rule of law will be served by the issuance of [an order for specific performance and an injunction], particularly here, where creditors of the Republic have no recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual

- 14 -

promises. No less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations." Injunction Order, p. 3 ¶ 1(d).

83.     Again, the public interest weighs even more heavily in favor of awarding CVI specific performance and injunctive relief as a judgment-creditor on the Bonds.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

84.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 83 herein.

85.     By reason of the foregoing, Argentina is in breach of its contractual obligations to CVI to treat its Bonds pari passu with other bonds and to pay its outstanding debt to CVI based on its Bonds ratably to payments it makes to any other bondholders.

86.     Argentina is liable to CVI in an amount in excess of $200,000,000.00, pursuant to judgments CVI has received under its Bonds.

87.     The total amount due to CVI is $213,379,900 as of September 8, 2014, comprising: (a) $104,450,284.00, based on CVI's June 8, 2007 judgment in Case No. 06-Civ.-207 (TPG) against Argentina on certain Bonds issued pursuant to the FAA (Docket No. 44); (b) $52,116,640.00, based on its March 16, 2007 judgment in Case No. 05-Civ.-4085 (TPG) against Argentina on certain Bonds issued pursuant to the FAA (Docket No. 82); and (c) $56,812,976.00, constituting post-judgment interest on these judgments at the applicable rates as of September 8, 2014, with post-judgment interest increasing by $21,218.83 per day thereafter.

88.     Argentina should be declared in breach of its bond obligations to CVI based on its subordination of CVI's Bonds and its failure to pay CVI the amounts due to it while paying other bondholders amounts owed to them based on External Indebtedness.

- 15 -

## SECOND CLAIM FOR RELIEF
### (For Specific Performance of the Pari Passu/Equal Treatment Clause And For Injunctive Relief)

89.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 88 herein.

90.    Pursuant to the FAA, Argentina agreed that the Bonds would be pari passu and rank equally, including in payment obligations, with all other External Indebtedness.

91.    Argentina, therefore, may not make any payment of its External Indebtedness without also making a payment at the same time to CVI.

92.    Through the passage of the Lock Law, Argentina issued a new series of bonds with payment obligations that rank higher than those held by CVI and other non-tendering bondholders in violation of the Pari Passu/Equal Treatment Clause.

93.    Through the passage of the Lock Law Suspension, Argentina issued a new series of bonds with payment obligations that rank higher than those held by CVI and other non-tendering bondholders in violation of the Pari Passu/Equal Treatment Clause.

94.    The bonds issued in the 2005 and 2010 Exchanges are External Indebtedness and their issuance violated the Pari Passu/Equal Treatment Clause.

95.    Argentina's past payment of interest to 2005 Bondholders, while paying nothing to CVI and other non-tendering bondholders, violated the Pari Passu/Equal Treatment Clause.

96.    Argentina's continuing payments of interest to 2005 Bondholders will be a continuing violation of the Pari Passu/Equal Treatment Clause.

97.    Argentina's past payment of interest to 2010 Bondholders, while paying nothing to CVI and other non-tendering bondholders, violated the Pari Passu/Equal Treatment Clause.

98.    Argentina's continuing payments of interest to 2010 Bondholders will be a continuing violation of the Pari Passu/Equal Treatment Clause.

- 16 -

99.    CVI has suffered irreparable injury from Argentina's violation of the Pari Passu/Equal Treatment Clause and will continue to suffer injury unless the Court specifically enforces that provision with a mandatory injunction requiring Argentina to pay CVI ratably whenever it pays interest to 2005 or 2010 Bondholders.

100.    Remedies available at law are inadequate to compensate for CVI's injury.

101.    CVI has performed its part of the contract with Argentina.

102.    Argentina is capable of performing its obligations pursuant to the Pari Passu/Equal Treatment Clause.

103.    The balance of the equities tips toward the issuance of an injunction.

104.    The public interest would not be disserved by an injunction.

**WHEREFORE**, CVI demands judgment against Argentina as follows:

A.    On the First Claim for Relief, a finding that Argentina is in breach of the Pari Passu/Equal Treatment Clause of the FAA in connection with the Bonds owned by CVI;

B.    On the Second Claim for Relief, entering an Order specifically enforcing the Pari Passu/Equal Treatment Clause of the FAA;

C.    On the Second Claim for Relief, granting CVI a mandatory, preliminary and permanent injunction preventing Argentina from continuing to violate the Pari Passu/Equal Treatment Clause of the FAA with respect to the Bonds;

D.    On the Second Claim for Relief, granting CVI a mandatory, preliminary and permanent injunction directing that, in the event Argentina makes any payments to any other holders of External Indebtedness of Argentina, it must contemporaneously pay CVI ratably based on amounts owed to CVI based on the Bonds;

E.    Awarding CVI interest, costs, expenses and attorneys' fees; and

- 17 -

F.    Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 8, 2014

BALLARD SPAHR LLP

By:_____
       Norman M. Goldberger (*pro hac vice*
        motion to be filed)
       Laura E. Krabill (*pro hac vice* motion to be
        filed)
       Scott M. Himes
       goldbergerm@ballardspahr.com
       krabilll@ballardspahr.com
       himess@bssfny.com

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500 (telephone)
(215) 864-8999 (facsimile)

-and-

BALLARD SPAHR STILLMAN
& FRIEDMAN LLP

425 Park Avenue
New York, NY 10022
(212) 223-0200 (telephone)
(212) 223-1942 (facsimile)

*Attorneys for Capital Ventures International*

- 18 -